UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80909-CIV- MARRA/JOHNSON

|  |  |  |
|---|---|---|
| KRISTY HENDERSON, individually and on behalf of persons similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO.: |
| v. | ) ) ) | 9:09-cv-80909-Marra/Johnson |
| HOLIDAY CVS, L.L.C., a Florida limited liability company, CVS CAREMARK CORPORATION, a Delaware corporation d/b/a CVS/PHARMACY, CVS PHARMACY, INC., a Rhode Island corporation, d/b/a CVS/PHARMACY, and XYZ ENTITIES 1-1000, fictitious names of unknown liable entities, | ) ) ) ) ) ) ) ) ) | November 20, 2009 |
| Defendants. | ) ) ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO AUTHORIZE NOTICE TO POTENTIAL CLASS MEMBERS

## INTRODUCTION

Plaintiff's claim that she and other CVS assistant store managers ("ASMs") in Florida are similarly situated turns not on a common policy or uniform job, but instead on what each ASM did on a daily basis. According to Plaintiff's own testimony, her ASM job "was never the same every day as far as duties go." (Henderson Dep. 45, Ex. A hereto.) As detailed below, Plaintiff's testimony establishes her ASM responsibilities at three stores in two districts varied widely depending on the store where she worked and were completely different from those of the other ASM with whom she worked. These dissimilarities become more dramatic when compared to opt-in Chaudhry's deposition testimony regarding his duties as an ASM, and the testimony submitted from Defendants' declarants. Wide differences in the employment experiences of Plaintiff and opt-ins, which are apparent now, will require the Court to engage in a case-by-case, fact-intensive analysis to determine liability, making this case unsuitable and unmanageable for collective treatment. As such, despite Plaintiff's reliance on this Court's 2005 decision to conditionally certify a group of Starbucks store managers alleging they were "glorified baristas," this record confirms the absence of any "uniform testimony" to suggest Plaintiff, the opt-ins, and her declarants "uniformly agree" on the nature of their job duties.

Under the Eleventh Circuit's *ad hoc* approach to conditional certification, the Court has the discretion to tailor its evaluation of whether Plaintiff meets her two-part burden of proof to the specific evidence in and circumstances of this case. Where, as here, the duties of ASMs vary day-to-day, store-to-store and person-to-person, without any assessment of the merits, the Court's review of even this limited record compels a finding that this case is unfit for collective treatment.

## FACTUAL BACKGROUND

### CVS OPERATIONS[1]

CVS operates approximately 700 retail pharmacy stores within the State of Florida. (Hay Dep. 19-20, Ex. B hereto.)[2] These stores are divided between two "areas" (Area 8 and 12) within Florida, and further subdivided into 5 "regions" and 37 "districts." (*Id.* 19, 220, 223.)

---

[1] By filing this Opposition, Defendant CVS Caremark Corporation specially appears without waiving its defenses regarding process, venue, and jurisdiction.

[2] Ms. Hay was deposed pursuant to Rule 30(b)(6) as the corporate representative for CVS.

Plaintiff and all of the individuals who have opted into this case worked in a handful of districts in Area 12. (Hay Decl. ¶¶5-11, Ex. C hereto.)

Unlike most retail chains, there are many different types of CVS stores, such as, for example, pharmacy-driven stores, front-store driven stores, photo stores, non-photo stores, 24-hour stores, high volume stores, low volume stores, training stores and specialty pharmacy stores. (Hay Dep. 79-83.) Not all CVS stores in Florida employ an ASM, while others may employ multiple ASMs. (*Id.* 21.)

The way a store is managed and staffed varies depending on the type of store and its business needs. (*Id.* 17-18.) At some stores, management duties are shared between a store manager ("SM") and one ASM. (*Id.* 21-24, 27.) At a store with one ASM, the ASM is responsible jointly with the SM to manage and lead the store and its hourly employees. (*Id.* 27, 38.) At some stores, management duties are shared by the SM and multiple ASMs. (*Id.* 87; Henderson Dep. 26.) Because each SM is responsible for "divvying up" responsibilities with the ASMs, the specific duties of each ASM vary from store-to-store and day-to-day depending on, among other things, the SM, the needs of the store, and the abilities of each ASM. (Hay Dep. 36, 58, 68.) Some stores are training stores, where the SM is a Training Store Manager ("TSM"), who frequently is not physically present in the home store. (*Id.* 10-11; Henderson Dep. 257-58.) At the training store, the ASM usually is in charge day-to-day. (Hay Dep. 10-11; Henderson Dep. 257-58, 272-73.) At some stores, ASMs run the store on their own while SMs are out on vacation, maternity, or disability leave. (Hay Dep. 133.) ASMs are also asked to manage district-wide projects (such as audits). (*Id.* 133, 200.) Given this significant variation, CVS has never had a one-size-fits-all formal, written job description that dictates all the duties of all ASMs. (*Id.* 38.) Rather, the "job description" for an ASM is to work with the SM to manage and run the store. (*Id.*)

Even the training of an ASM is determined at the store level. (*Id.* 147, 162-63.) While CVS has three phases of formal training, the actual training an ASM receives varies depending on his or her prior management experience and abilities. (*Id.* 120.) ASMs complete the sections of the training determined applicable and needed, and some undergo no training at all. (*Id.* 120, 138, 142-43.) The training modules are only guidelines administered based on the localized

2

goals of the district and region. (*Id.* 159.) In fact, some stores have unique training modules to address specific, local issues. (*Id.* 160.)

## HENDERSON'S EMPLOYMENT WITH CVS & MANAGERIAL RESPONSIBILITIES

Henderson worked at three different CVS stores in two districts in Florida for less than eight months, from May to December 2007. (Compl. ¶ 2; Henderson Dep. 20-21.[3]) As set forth below, Henderson admits that the stores she worked in were very different, the job she performed depended on the store and SM and her job varied from store to store and day to day. Henderson testified about these vast differences in the three stores and her duties at each store:

•**Hours, Size, and Volume**: Store 536, which is a training store in Palm Springs and Store 3400 in West Palm Beach were open 24 hours a day, but store 3964 in Lake Worth was only open from 7 a.m. to 10 p.m. (*Id.* 49.) Store 3400 was the largest in volume and size, closely followed by store 536. (*Id.* 32-33.) Store 3964 was lower in both volume and size. (*Id.* 32.)

•**Staffing**: At store 536 Henderson worked with another ASM, Patricia Travers. (*Id.* 26.) At stores 3964 and 3400 Henderson was the only ASM on staff. (*Id.*) Stores 536 and 3400 had merchandisers responsible for working on the floor stocking shelves, but store 536 had fewer "merchandisers" and more Shift Supervisors. (*Id.* 39-41, 44-45.) Store 3400 had a dedicated maintenance employee. (*Id.* 43-44.) Store 536 had a dedicated beauty advisor. (*Id.* 39.)

•**Supervision**: The number of employees Henderson supervised "depended on which store I was in," with a low of 25 employees to as many as 40 employees. (*Id.* 124.)

Henderson admitted that her job as an ASM "was never the same every day as far as duties go." (*Id.* 45.) Henderson also testified that she wielded significant, but varying, management responsibilities at some of the stores in which she worked, including:

- At stores 3964 and 3400, but not at store 536, she interviewed applicants and answered questions for job candidates. (*Id.* 134-35, 149.)
- At store 536, Henderson never recommended that any employee be fired and/or disciplined. (*Id.* 138-39.) She made recommendations that employees be fired or disciplined at stores

---

[3] Plaintiff's and opt-in Chaudhry's depositions are controlling, and their later counsel-crafted declarations should not be considered, particularly where they directly contradict earlier deposition testimony. *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984); (*compare* Henderson Decl., Dkt. 32-1 ¶ 11 *with* Henderson Dep. 150, 147.)

3400 and 3964. (*Id.* 139-40, 142-43.) Her SM at store 3964 listened to her recommendations, but her SM at store 3400 did not. (*Id.* 139-40, 143-44.)

- At store 3400, hourly employees "naturally" called Henderson with questions if the SM was unavailable (*id.* 144), but at store 536, her SM was more controlling and liked to be apprised of everything that happened in the store (*id.* 184-85).

- At stores 3964 and 3400, Henderson spoke to human resources on behalf of hourly employees regarding the conduct of her SM or deviation from company policy. (*Id.* 170-71.) She never did this at store 536. (*Id.* 181.)

- At stores 3400 and 3964 she prepared financial reports regarding weekly sales, payroll budget, number of prescriptions filled, and inventory. (*Id.* 208-218.) The reports she prepared and how much time she spent preparing them varied from week-to-week at stores 3400 and 3964, depending on the extent to which her SM handled these reports. (*Id.*) At store 536, Henderson learned how to prepare these reports by watching fellow ASM Patricia Travers prepare them, but never did them herself. (*Id.* 216-17.)

- In store 3964, Henderson dealt with shoplifters "all the time." (*Id.* 195.) Henderson handled shoplifters less frequently at store 3400, and never dealt with shoplifters at store 536. (*Id.*)

- At stores 3964 and 3400, Henderson helped associates grow and develop in their jobs and encouraged them to seek promotions when appropriate. (*Id.* 224-25.)

- Henderson learned to run payroll at store 536, under the ASM's and SM's direction. (*Id.* 210.) At store 3400, Henderson worked on payroll by making changes and investigating employee concerns about payroll, but her work "had to be approved" by the SM. (*Id.* 210-11.) At store 3964, she handled payroll on her own. (*Id.* 214.)

- At store 3400, her SM "really didn't give [her] a whole lot of free rein to do my own thing and create my own thing" with merchandising (i.e., deciding the products to display in certain areas of the store), displays, and end caps. (*Id.* 239-40.) At store 3964, however, her SM "really wasn't interested in doing [merchandising], so he'd let me do it." (*Id.* 239.)

- At store 536, Henderson testified that she "wasn't there to delegate" and that when the SM was not there, the other ASM, Patricia Travers, "was running the store." (*Id.* 256-58.) By contrast, at store 3400, Henderson delegated work to hourly employees that had to be done around the store, and assigned work based on the particular skills of the employees available.

4

(*Id.* 253.)  Sometimes at store 3400, Henderson would not delegate certain work because she was concerned that an hourly employee would not do it correctly.  (*Id.* 254.)  Delegating work to hourly employees differed at store 3964, because the store employed fewer employees, most of whom completed the same tasks every day.  (*Id.* 256.)  For example, the store had a dedicated stock room worker who always restocked the back room.  (*Id.*)

- At store 536, Henderson did not create the weekly schedule for hourly employees.  (*Id.* 276). But at stores 3964 and 3400, she made suggestions about the schedule (some accepted and others not), and even created the schedule on her own.  (*Id.* 259-60, 262.)

- At store 3964, but not elsewhere, Henderson provided input for employee performance reviews.  (*Id.* 277.)

**VARYING JOB DUTIES OF OTHER ASMS**

According to Henderson, the only other ASM she worked with, Patricia Travers, exercised significant managerial duties, including running the store in the SM's absence, delegating tasks to other employees, supervising other employees, discipline, training, and resolving customer complaints.  (*Id.* 271-72, 257-58.)  Henderson insisted that she "had no doubt that [Patricia could discipline employees.]"  (*Id.* 271.)

During her brief employment with CVS, Henderson spent no more than two months at any single store.  (*Id.* 23-27.)  She began her employment at a training store, and as the TSM was often not in the store, the ASM, Travers, ran the store day to day.  (*Id.* 257-58.)  Ms. Henderson testified that ASM Travers trained Henderson how to run the store, (*id.* 271-72); supervised other employees, and told them what to do (*id.* 258, 270-71); disciplined employees (*id.* 271); handled customer complaints (*id.* 271); prepared cash reconciliations and cash register counts and logs (*id.* 272);  directed opening procedures, including cash register drawer counts (*id.* 273); prepared weekly financial paperwork documenting store financial performance and prepare weekly payroll (*id.* 216); and determined what products sell well in certain parts of the store (merchandising) (*id.* 236).

Seven former Florida ASMs have filed consents to join the case (three filed in the fifteen days before this brief was due).[4]  Henderson submitted declarations from Chaudhry, Gorman,

---

[4] The opt-ins are Alberto Martinez, Muhammad Chaudhry, Wesley Gorman, Larry Brinkley, John Barrett, Francis Alyn, and Michael Edwards.  However, Mr. Martinez abandoned his

and Brinkley in support of her Motion. (Dkt. No. 32.) Except for the dates and names, each of
these declarations, like Henderson's declaration, is identical, containing the exact same
conclusory text. Plaintiff worked in two districts and each of her declarants worked in a single
district. (Hay Decl. ¶¶5-11.)

Chaudhry, like Henderson, has been deposed.[5] Chaudhry worked as an ASM at
four different CVS stores for a total of only six or seven months in 2006.[6] (Chaudhry
Dep. 10, Ex. D hereto.) Unlike Henderson, Chaudhry claims that he exercised no
management responsibilities at any store when the SM was in the store. (Id. 90.)
According to Chaudhry, he did only what the SM instructed him to do, nothing more.
(Id. 139-40.) Chaudhry likewise testified that he had no duties related to payroll, hiring,
firing, financial matters, or any of the other managerial tasks Henderson testified she
performed at the different stores where she worked. (Cf. list at pp. 3-5 with Chaudhry
Dep. 82, 160, 171-73, 214-15, 242.) Chaudhry also never asked his SM what he could do
to assist in managing the store. (Id. 139.) Chaudhry did acknowledge that the one other
ASM (Connie Khan) he worked with at store 2669 (in Jacksonville) was very different
from him in that she exercised significant managerial duties, such as training other
employees, supervising other employees, assigning and directing work, handling
financial paperwork, and controlling the register keys. (Id. 83, 100-02.) Apart from
Connie Khan, Chaudhry has no personal knowledge of any other ASMs. (Id. 190.)

The nearly identical Gorman and Brinkley declarations merely serve to underscore the
differences when contrasted with the deposition testimony and other declarations. CVS submits
the declarations of ASM Carlos Araujo, who worked as an ASM in Boynton Beach, Florida, and
SM Marcia Crider, who worked as an ASM before she was promoted to SM. As a CVS ASM,
Araujo has interviewed and recommended candidates, but had more of these responsibilities at
3275 (a college store with more turnover) than at 5233 which had a set staff during his tenure.

---

deposition at the first morning break and has since withdrawn his consent. (Dkt. No. 27.)
Likewise, Mr. Gorman accepted an offer of judgment and has been dismissed. (Dkt. No. 18.)
[5] Henderson failed to identify Gorman, Brinkley, or any other opt-in as potential witnesses on
her Rule 26(a) Initial Disclosures and thus CVS did not have a chance to depose them.
[6] He was forced to resign in January 2007 after a female employee alleged Chaudhry had
inappropriately touched her. (Id. 95.)

(Araujo Decl. ¶4e, 7, Ex. E hereto.)  Crider describes as an ASM screening applicants, participating in interviews, and cannot remember a time her recommendations were not followed.  (Crider Decl. ¶16, Ex. F hereto.)  Chaudhry claims he did nothing.  (Chaudhry Dep. 172-73.)  By contrast, Brinkley and Gorman assert that they either gave no recommendations on hiring or their recommendations were given no weight. (Brinkley/Gorman Dec. ¶11.)

Supervision and work assignments are likewise divergent from store to store and even within stores.  Araujo independently created lists of tasks to be completed by his crew and assigned work at two stores, but not at a third. (Araujo Dec. ¶6.)  Chaudhry claims he did not supervise or delegate,[7] but admits ASM Khan did. (Chaudhry Dep. 104).  The Gorman and Brinkley declarations are silent on the issue of assigning work, though they both claim they did not "regularly and independently" supervise employees. (Brinkley/Gorman Dec. ¶11).

## ARGUMENT AND AUTHORITIES

Although courts in this Circuit follow a two-stage procedure, *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001), a "district court does not mechanically apply [a lenient] standard and allow further notice without an examination of the evidence."  *Miranda v. Blockbuster, Inc.*, No. 1:04-cv-21810-AJ (S.D. Fla. March 14, 2005) (denying motion).  Plaintiff must present substantial evidence demonstrating a reasonable basis for the Court to conclude that Plaintiff and prospective opt-in plaintiffs are similarly situated, such as detailed allegations and affidavits which "engage Defendant's affidavits to the contrary." *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (citation omitted).  Relying on "the mere facts of job duties and pay provisions" to rubber-stamp Plaintiff's allegations that she and the prospective class members are similarly situated threatens the judicial economy which motivates the Section 216(b) collective action procedure. *Holt v. Rite Aid*, 333 F. Supp. 2d 1265, 1270 (M.D. Ala. 2004).

Even at this initial stage, Henderson fails to present substantial evidence that Henderson and prospective opt-in plaintiffs are similarly situated or that other employees wish to join. Alternatively, even if Henderson had made the required showing, her request for statewide notice should be narrowed to the limited areas for which Henderson has presented any proof.

---

[7] Chaudhry denied he ever even performed a walkthrough (Chaudhry Dep. 106-07)—something Henderson did daily (Henderson Dep. 244-45).

7

I.    **HENDERSON AND THE OPT-INS ARE NOT SIMILARLY SITUATED.**

    A.    **The Motion Should Be Denied Without Merits-Based Inquiry.**

There is nothing inherently "non-exempt" about the title or job description of retail assistant managers. Indeed, the Department of Labor specifically identified retail assistant managers as employees who may be exempt "if the assistant manager's primary duty is management." 29 C.F.R. §541.106(b).[8] Nevertheless, because Henderson alleges that she was improperly classified based on her <u>actual</u> job duties, (Compl. ¶ 3), this case will require a highly fact-intensive and case-by-case analysis of whether Henderson's actual duties can meet the test for exemption under the DOL regulations. *See Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 569 (E.D. La. 2008); *see also* 29 C.F.R. § 541.700(a); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D. N.J. 2000) ("'[S]imilarly situated' in this case must be analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue to be determined is whether each employee was properly classified as exempt.").

While the Court need not examine now whether Henderson (or other opt-in ASMs) were, in fact, exempt employees, "class certification issues cannot be decided in a vacuum." *West v. Verizon Commc'ns, Inc.*, 2009 WL 2957963, at*4 (M.D. Fla. Sept. 10, 2009). "It is entirely appropriate for the Court to be cognizant of the factual and legal issues presented by the case when determining whether this case can be appropriately treated as a collective action." *Id.* (citation omitted); *see also Diaz v. Elec. Boutique of America, Inc.*, 2005 WL 2654270 at *5 n.8 (W.D.N.Y. Oct. 17, 2005) (denying conditional certification where "significant differences are apparent at the outset and discovery cannot resolve the defects in plaintiffs' claims."). This is particularly true where, as here, the parties have already engaged in discovery. Henderson has deposed CVS's corporate representative, and CVS has deposed Henderson and two opt-ins. The parties have also exchanged written discovery and produced documents, many of which Henderson submitted in support of the instant Motion. Nothing in the law suggests that the Court ignore evidence that is before it merely because the case is at a preliminary stage. In fact,

---

[8] 29 C.F.R. §541.106(b) provides: "[A]n assistant manager in a retail establishment may perform work such as serving customers, . . . stocking shelves and cleaning the establishment, but performance of such nonexempt work does not preclude the exemption if the assistant manager's primary duty is management. An assistant manager can supervise employees and serve customers at the same time without losing the exemption. An exempt employee can also simultaneously direct the work of other employees and stock shelves."

exactly the opposite is true. *See Cohen v. Allied Steel Bldgs., Inc.*, 554 F. Supp. 2d 1331, 1334 (S.D. Fla. 2008) (considering evidence regarding plaintiffs' job duties because "[w]hile such an argument is usually raised under the second tier analysis, its factual specificity highlights the cursory and inadequate allegations that Plaintiff has made to support a proposed class."). Courts must retain the flexibility to weed out claims that are ill-suited for class treatment early on. *E.g.*, *Holt*, 333 F. Supp. at 1275 (careful analysis required because "courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation."); *Basco v. Wal-Mart Stores Inc.*, 2004 WL 1497709, at *7 (E.D. La. July 2, 2004) (denying motion to certify because existing evidence demonstrated that the effects on the workers were "neither homogeneous nor lend[ed] themselves to collective inquiry."); *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 221 (D. Conn. 2003) (declining to certify misclassification case because it would require each plaintiff to "present specific evidence of his or her daily tasks....").

A recent FLSA case with similar "job description" and misclassification allegations is instructive. In *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 569 (E.D. La. 2008), two ASMs for Defendant Big Lots filed a collective action claiming that they were misclassified as exempt. Like Henderson, the Big Lots ASMs alleged that, although their job descriptions included managerial responsibilities, their time was spent performing nonexempt duties. *Id.* Using the two-stage inquiry, the court in Big Lots conditionally certified the class. *Id.* After more than two years of discovery, Big Lots moved to decertify, which the court denied, seeking to avoid a review of the "merits." *Id.* The court then held a bench trial on the merits. *Id.* at 570. Before rendering its verdict, the court decided it "must confront once again the vexing question of whether the opt-in-plaintiffs are sufficiently similar such that adjudication of their claims based on representative proof may be done in a manner that respects the rights of both parties." *Id.* at 571. The court decertified the class, recognizing that, given the plaintiffs' allegations, it must examine what each ASM did on a daily basis. *Id.* at 579 ("A job title alone, however, is 'insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations.'") (quoting 29 C.F.R. § 541.2). To that end, the court contrasted the deposition testimony of two opt-in plaintiffs. As the court explained,

Plaintiff Ramos testified that she:  prepared work schedules on a weekly basis; trained other associates; although she performed nonexempt tasks, regularly supervised the work of 3-6 employees; assigned work tasks to other employees; interviewed job applicants; conducted annual performance appraisals; recommended promotions; and had the authority to write-up employees. *Id.* at 585.  Plaintiff Johnson, on the other hand, testified that his duties were very different.  According to Johnson, he:  "received daily work assignments from his store managers"; "never hired or fired anyone"; "had to follow corporate directives"; "was not responsible for managing the store"; "frequently performed nonexempt tasks"; "never directed the work of any employees"; "was never responsible for supervising an employees other than himself"; and never provided any substantive input into appraisals.  *Id.* at 585-86.  The Court concluded that this testimony "illustrate[s] the wide differences in employment experiences between individual employees and the lack of common proof applicable to the class as a whole" and further concluded that treatment of the case as a collective action was not appropriate.  *Id.* at 586.

The evidence in this case -- the contrasting deposition testimony of Henderson and Chaudhry -- is the same as the type of evidence that led the *Johnson* court to decertify that class of ASMs after years of the parties' and court's resources.  As discussed above, Henderson testified that, depending on the store where she worked, she: interviewed and answered questions for job candidates, made recommendations regarding termination of hourly employees which were followed, ran the store when the SM was absent, intervened with human resources on behalf of hourly employees, handled payroll and other financial reports regarding the store, addressed and investigated shoplifters and theft issues, provided feedback to hourly employees and delegated to and supervised the work of hourly employees. (*See supra* pp. 3-5.)  On the other hand, Chaudhry testified that he had no duties related to payroll, hiring, firing, financial matters, or delegating or supervising of employees. (*See supra* pp. 6-7.)  This evidence leads to the same inescapable conclusion reached in *Johnson*: wide differences in employment experiences between individual employees and admitted dissimilarities among ASMs renders this matter unfit for collective treatment.

This Court is in the position to avoid that which, when compelled to decertify the class, the *Johnson* court lamented: "the large investment of resources" wasted during three years of

10

litigation undertaken because the Court erroneously "expected the evidence to be more uniform." *Id.* at 587. This Court need not, however, permit months or years of additional litigation, because the evidence the *Johnson* court lacked at the outset, but was presented at trial, is already before this Court. On this record, there is simply no justification for costly discovery that would be a waste of the parties' and Court's time and resources. [9] Nor should the Court—based on the record before it—have to examine the issue of certification twice through a mechanical application of the two-stage certification inquiry.

CVS, relying on Plaintiff's and her opt-in's deposition testimony, has established for the Court the lack of similarity in the duties of Henderson, Chaudhry, and other ASMs to show that Henderson has not made substantial allegations that the group she proposes is similarly situated. Henderson's conclusory allegations do not exist in a vacuum and cannot be accepted at face value, especially where they contradict sworn deposition testimony. Furthermore, this evidence shows that Henderson's claims will require an individual, fact intensive analysis inappropriate for collective treatment. *Morisky*, 111 F. Supp. 2d at 498-499 (D. N.J. 2000).

**B.    NONE OF THE EVIDENCE CITED BY HENDERSON DEMONSTRATES A COMMON UNLAWFUL POLICY OR PRACTICE TO SUPPORT CONDITIONAL CERTIFICATION.**

**1.    There is No Standard 45-Hour Workweek For ASMs.**

Henderson claims there is a "common, class-wide characteristic" that CVS expected ASMs to work 45 hours. The 45-hour number to which Plaintiff refers, however, is nothing more than a placeholder used by the payroll company and bears no relationship to the hours actually worked by employees. (Hay Dep. 185.) Henderson admitted she was informed when hired that her salary was not tied to 45 hours, and ASMs are paid a salary regardless of actual hours. (*Id.* 234; Henderson Dep. 292-93.) Indeed, Henderson and Chaudhry each testified that their hours fluctuated from week-to-week in their respective stores, and testified to varying

---

[9] *Johnson* is, of course, not the only court that has been forced to decertify a class after years of litigation. *E.g.*, *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 283 (N.D. Tex. 2008) (decertifying after more than 35 depositions because plaintiffs' claims "vary from store to store and manager to manager"); *Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 WL 2830015, at *11 (D. Minn. Sept. 26, 2006) (decertified after nearly four years because plaintiffs' duties varied substantially); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D. N.J. 1987) (decertified after fifty-four depositions and years of litigation because of "disparate factual and employment settings").

amounts of time worked.  (Henderson Dep. 263-64, 267-69, 292-93, 299 (48 - 70 hours); Chaudhry Dep. 120-22, 126-30, 267 (less than 45 - 70 hours).)

### 2.    There Is No Uniform Job Description For ASMs.

Henderson also suggests that class-wide treatment is appropriate because there is a uniform job description applicable to all ASMs.  The document referenced by Henderson is an "essential function form" given to physicians for ADA purposes when individuals seek accommodations for physical limitations.  (Hay Dep. 97-100.)  It is not a job description in the sense that it describes all of the daily duties of every ASM.  (*Id.* 101-02, 104.)  The duties of an ASM are prescribed by the SM and the needs of the store—not by any written document—and thus vary from store to store.  (*Id.* 102.)  While some courts have conditionally certified classes where an employer <u>admits</u> that the job description (1) "accurately describes the duties of an ASM," and (2) "applies to all ASMs" regardless of location, *see, e.g., Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 104 (D. Conn. 2007), this case is different for two reasons.  First, Chaudhry testified that his job was "whatever she [the Store Manager] directed me, whatever she told me to do." (Chaudhry Dep. 139).  Chaudhry also denied and disavowed any responsibility for the duties on that very written document on which Plaintiff's theory rests.  (*Id.* 82, 160, 171-73, 214-15, 242.)  Second, Henderson described a differing set of duties depending on the store where she worked and the SM she worked for.  (*See supra* pp. 3-5.)  Henderson and Chaudhry thus <u>admit</u> that the written document on which Plaintiff premises her motion does <u>not</u> describe, much less proscribe, their actual job duties.

### 3.    There Is No Uniform "Job Code," Salary, or Training For ASMs.

Henderson's reference to a uniform "job code" is a red herring.  The job code is a data code – *i.e.*, a job title – used by CVS' outside payroll company to identify the position.  (Hay Dep. 184-85.)  The Eleventh Circuit has squarely rejected the notion that a class exists simply because employees share a title.  *Grayson*, 79 F. 3d at 1096.

While CVS, like most companies, has established salary guidelines for its employees, those guidelines establish a broad range within which an ASM's salary is "locally" set depending on a number of criteria and qualification of the individual.[10]  (Hay Dep. 93-94, 196-97.)

---

[10] For example, Henderson's annual base salary was $47,244, whereas Chaudhry's was $36,995 and Gorman's was over $50,000.  (Hay Decl. ¶¶5, 6, 11.)

Moreover, the region, district and store managers in Florida also determine the amount of merit-based bonus compensation a particular ASM may receive. (*Id*.) There is simply no uniform salary applicable to all ASMs, as Henderson suggests.

Henderson further contends that ASMs are similarly situated because CVS has a "common training program" for the ASM position. This is also inaccurate. The training, if any, that an ASM actually receives is determined at store level and varies depending on the ASM's prior management experience and abilities. (*Id.* 120, 147, 162-63.) Some ASMs only complete portions of the training modules, while others undergo no training. (*Id.* at 120, 138, 142-43.) The training modules are only guidelines, and they are administered based on the local goals at the district and region level. (*Id.* at 159.) In fact, some stores have their own unique training modules. (*Id.* at 160.)

### 4.    There Is No Uniformity In Job Duties For ASMs.

Henderson asserts that ASMs are similarly situated because the form declarations accompanying her Motion allege "similar descriptions of their work duties" and that the duties are "consistent for the assistant manager position." (Mot. at 9-10.) Henderson is correct on only one point: all of the declarations allege the same thing. In fact, except for names and dates, the declarations are <u>exactly the same</u>. These form declarations, however, should be given no weight. (Dkt. No. 32.) The Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Similarly, this Court has rejected the notion that cut-and-paste declarations like these are sufficient to carry the burden on conditional certification. *E.g.*, *Cohen*, 554 F. Supp. 2d at 1334 (denying certification where "nearly identical" declarations by Shavitz Law Group failed to show similarly situated).

More important, the conclusory statements in the declarations are flatly inconsistent with the other evidence in this case, including the <u>prior</u> deposition testimony of Henderson and Chaudhry, which firmly establish that the duties of the ASM vary from day-to-day and store-to-store, and from ASM to ASM. Henderson testified at length about the numerous managerial duties she performed during her brief career at CVS, including, among other things, supervising hourly employees, assigning and directing work, training, and involvement in hiring and firing decisions. (*Supra* pp. 3-5.) Henderson testified that she supervised the work of others and

described her style as "leading by example." (Henderson Dep. 115.) Henderson also testified unequivocally that another ASM, Patricia Travers, ran store 536 in TSM Rosie Garcia's frequent absence. (*Id.* at 271-72, 257-58.) Chaudhry testified that yet another ASM, Khan, performed management duties on a regular basis, such as telling Chaudhry and other employees what to do, completing the office paperwork, and controlled the use of register keys. (Chaudhry Dep. 83, 100-02.) Each of their descriptions about the precise duties these ASMs performed was different. On the other hand, Chaudhry claimed that he performed very few, if any, management duties. (*Id.* at 82, 160, 171-73, 214-15, 242.)

Henderson made clear that the level of management authority she wielded varied depending on the SM and the store in which she worked, and that her duties fluctuated on a daily basis. (Henderson Dep. 45 ("it was never the same every day as far as duties go.").) Even Chaudhry conceded that his work duties, much like his shifts, changed from day-to-day. (Chaudhry Dep. 82, 122.) CVS' corporate representative explained that while ASMs are expected to perform exempt, management duties, their exact responsibilities vary significantly from store-to-store and day-to-day. (Hay Dep. 36.) This is the very nature of the ASM position, which is to manage and lead the store jointly with the SM. (*Id.* at 38.) Each individual SM—not corporate headquarters—is responsible for "divvying up" the management responsibilities in his or her store. (*Id.* at 58.) As such, the decision about which duties are assumed by an ASM turns on numerous variables, such as the business needs of the store, "the strength of the store manager, the weaknesses of the store manager, [and] the strengths and opportunities of the assistant." (*Id.* at 68.) There is simply no common thread that binds the job duties of all ASMs together.

C.    THIS CASE IS DIFFERENT FROM *PENDLEBURY*, AND LIKE *HOLT V. RITE AID*.

In an effort to distract from the obvious variances amongst ASMs, Henderson cites repeatedly to this Court's prior decision in *Pendlebury v. Starbucks Coffee Co.*, 2005 WL 84500 (S.D. Fla. Jan. 3, 2005) (Marra, J.). This case is not at all like *Pendlebury*. When determining whether the class was "similarly situated," *Pendlebury* relied on the fact that the four individual declarants "uniformly state" in their testimony concerning the nature of their job duties and tasks. *Id.* at *2 and *3. Such uniformity simply does not exist in this case. A comparison of

14

Henderson and Chaudhry's testimony concerning their respective job duties establishes that Henderson's and Chaudhry's job duties are anything but uniform.

In *Pendlebury*, Starbucks resisted conditional certification on the grounds that there were "significant differences in the amount of time spent on exempt and non-exempt tasks by the two named plaintiffs" and other managers. (Starbuck's Opp., No. 04-CV-80521-KAM, D.E. 34 at 14.) Here, by contrast, it is evident from the record that Henderson, Chaudhry and other ASMs were each performing entirely different day-to-day work in their ASM jobs. (*Supra* pp. 3-6.) Henderson, for example, regularly performed exempt tasks that Chaudhry never performed, and other ASMs regularly performed tasks that neither Henderson nor Chaudhry performed. Thus, unlike *Pendelbury* where the dispute centered on time spent, this case pierces the very heart of the exemption standard: actual job duties.

As this Court also noted in *Pendlebury*, a case such as this one is very different when the parties have engaged in discovery prior to the motion for certification. *Pendlebury* at *3. In this case, Plaintiff served interrogatories and 5 different sets of document requests on Defendant, and Defendant responded to this discovery. Plaintiff took the Rule 30(b)(6) deposition of Defendant and Defendant deposed Plaintiff and Chaudhry. Therefore, as observed in *Pendlebury*, this case should be analyzed under the stricter standard when ruling on plaintiff's motion for notice. *Id. citing Holt* 333 F. Supp. 2d at 1274. In *Holt v. Rite Aid*, the district court adopted a common sense approach to consideration of all the evidence presented at stage one:

> [T]he court finds that consideration of the evidence is appropriate because if this court were to allow the case to proceed past stage one of the collective action certification process, the court would have to consider this evidence in revisiting the similarly-situated inquiry on the Defendant's motion to decertify .... Because the court has the evidence before it at stage one, the court will consider it.

*Holt*, 333. F. Supp. 2d at 1274 n.4. This approach is in keeping with the Eleventh Circuit's refusal to adopt a bright line test, and its stated preference for an *ad hoc* approach to the two stage certification process. *See e.g., Grayson*, 79 F.3d at 1096 (instructing that district court must determine whether employees are similarly situated -- not whether the positions are identical -- but declining to adopt bright line definition); *see also Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (Eleventh Circuit's "ad hoc" approach is "arguably ... the best of the three approaches" taken by various circuits).

15

As in the *Holt* case, substantial evidence in this case indicates that the Court would have to inquire into the daily tasks/duties of each alleged collective action member to determine whether they each suffered an FLSA violation. Henderson's deposition testimony is dramatically different from Chaudhry's testimony on this subject, and the "uniformity" the Court found in Pendlebury is simply not present here, where Plaintiff and her witnesses testified to stark differences in their duties.

## II.     DESPITE SOLICITATION, THERE IS INSUFFICIENT INTEREST.

Shavitz Law Group has employed a web of marketing techniques spanning electronic and print media to, in effect, send out "notice" of this case without Court approval. Indeed, Henderson and Chaudhry received unsolicited mailings or emails from Shavitz Law Group inviting them to file or join a lawsuit against CVS for overtime compensation. (Henderson Dep. 315-16, 325; Chaudhry Dep. 21.) Neither Henderson nor Chaudhry knows how Shavitz Law Group got their names and addresses. (*Id.* 269; Henderson Dep. 325.)[11] In addition, many current CVS employees have received letters in the mail at home or emails (from the address "CVSlawsuitinfo") from Shavitz Law Group informing them that they may have a claim for unpaid overtime compensation against CVS and inviting them to contact lawyers at Shavitz Law Group. (*See e.g.*, Ex. 4 to Henderson Dep. and Ex. G hereto.)[12] Shavitz Law Group also hosts www.cvslawsuit.com, which invites current and former CVS employees to join this case. Despite the mass efforts at soliciting over the past several months, only six opt-ins remain in this case. This hardly matches the image Henderson paints in her Motion about potential plaintiffs

---

[11] Shavitz Law Group was recently sanctioned by this Court for violating Local Rule 11.1.C and Florida Rule of Professional Conduct 4-7.4(a) because it, in much the same way it has done here, directly solicited current and former employees of a defendant in an FLSA case. *Hamm v. TBC Corp.*, 597 F. Supp. 2d 1338, 1350-53 (S.D. Fla. 2009) (Ryskamp, K.). The sanctions have been affirmed by the Eleventh Circuit. 2009 WL 2599663 (11th Cir. Aug. 25, 2009). The Court also noted that, as a result of their tactics, Shavitz Law Group had managed to file more than 1,400 cases in the Southern District of Florida over the past five years—23% of all cases filed in the district. *Hamm*, 597 F. Supp. 2d at 1340.

[12] In March and May, Shavitz Law Group was told by the Florida Bar that their mailings violated the Bar rules. See Ex. G submitted herewith. Among other things, Shavitz was informed that "[n]either version [of his proposed solicitations] complies with Rules 4-7.1 through 4-7.10, Rules Regulating The Florida Bar." Shavitz Law Group mailed them anyway.

16

just waiting in the wings to "come forward."[13] (Mot. at 16.) This meager showing, in light of Plaintiff's counsel's extraordinary solicitation efforts, fails to meet even the low burden placed on a plaintiff at this stage in the litigation to justify issuance of court supervised notice.[14]

The lack of interest in this lawsuit is not remedied by the four conclusory declarations Henderson submitted. To demonstrate that other prospective class members desire to opt-in, Henderson must present evidence sufficient to support detailed allegations. *Hoffer v. Ocwen Loan Servicing, Inc.*, 2009 WL 1404696, at *2 (S.D. Fla. May 19, 2009) (Zloch, J.) (two plaintiffs' declarations with "identical" statement of awareness of others with interest insufficient, as "who these others are, whether they are similarly situated, and whether they are actually interested in joining in this suit is all left to guess-work."). Declarants should identify other employees who wish to join the suit to enable the court to find that others really do wish to join and whether those employees are similarly situated. *Robinson v. Dolgencorp, Inc.*, 2006 WL 3360944, at *5 (M.D. Fla. Nov. 13, 2006). Though notices of consent to join may serve as evidence that others desire to opt-in, they alone are not sufficient to carry Henderson's burden when only a few employees have opted in to the lawsuit. *Gonzales*, 2007 WL 1079291, at *3; *White*, 2006 WL 1722348, at *3; *Becker*, 2006 WL 3359687, at *3; *Wombles*, 2005 WL 3312670, at *3.

Henderson submitted four conclusory declarations that each contain the following identical statement:

> I anticipate that other current and former Assistant Managers who were not paid properly for their overtime hours will join this litigation if they are given notice of it and information about how to join it. Upon learning their rights, I believe they will exercise the right to join and recover the unpaid overtime due, and I understand some have already done so.

---

[13] Moreover, the conduct of the potential plaintiffs who have opted-in belies Henderson's position that others are "eager" to participate in this litigation. Opt-in Martinez left in the middle of his deposition and then withdrew from the case. (Dkt. No. 27.)

[14] *See, e.g., Gonzales v. Hair Club for Men, Ltd. Inc.*, 2007 WL 1079291 (M.D. Fla. Apr. 9, 2007) (two opt-ins were not sufficient from a potential pool of 1,000 employees); *White v. Kcpar, Inc.*, 2006 WL 1722348, at *3 (M.D. Fla. Jun. 20, 2006) (conditional certification denied where plaintiff only obtained two Consent to Join forms and provided three identical affidavits in support of motion); *Becker v. Soils*, 2006 WL 3359687, at *3 (M.D. Fla. 2006) (denying conditional certification where plaintiff secured consents to opt-in from only two others in eleven months); *Wombles v. Title Max of Ala., Inc.*, 2005 WL 3312670, at *3 (M.D. Ala. Dec. 7, 2005) (two consents to join insufficient to establish that others desired to opt in).

(Dkt. Nos. 32-1 ¶ 16, 32-2 ¶ 16, 32-3 ¶ 16, 32-4 ¶ 16.)  Like the deficient statement from the declarations in *Hoffer*, this formulaic statement is "speculative" and "has the tincture of lawyer-speak."  The statement recites only the declarants' respective speculative "belief" or "anticipation" that there are other ASMs interested in making claims, as opposed to reliable statements providing a reasonable basis from which the Court could conclude that other ASMs exist who genuinely wish to join this lawsuit.[15]

Furthermore, even if this uniform statement were reliable, it conflicts with the deposition testimony in this case.  Henderson testified that she did not know of any other ASM that was owed overtime compensation.  (Henderson Dep. 305-06.)  Chaudhry testified that he had no knowledge of any other ASMs, apart from Connie Khan.  (Chaudhry Dep. 190.)  Both Henderson and Chaudhry also admit that neither has had any communication with any current or former ASM regarding their interest in joining the lawsuit, and it is, therefore, abundantly clear that neither have any basis beyond speculation to "anticipate" that other ASMs wish to join the litigation.  (Henderson Dep. 325; Chaudhry Dep. 22.)

Henderson has not sustained her burden to demonstrate that others wish to join this lawsuit.  Consequently Henderson's request for conditional certification and supervised notice to a state-wide class of ASMs must be denied.  *See Vondriska v. Premier Mortgage Funding, Inc.*, 564 F. Supp. 2d 1330, 1334 (M.D. Fla. 2007) ("Certification of a collective action and notice to a potential class is not appropriate to determine <u>whether</u> there are others who desire to join the lawsuit.") (emphasis in original).

## III.   PLAINTIFF'S REQUEST FOR STATEWIDE NOTICE AND CERTIFICATION IS OVERBROAD.

Certification is not appropriate in this case because the group of ASMs that she seeks to represent are not similarly situated, and because Henderson fails to show that other similarly situated employees desire to participate in this suit.  If, however, the Court is inclined to permit

---

[15] *Louis-Charles v. Sun-Sentinel Co.*, 2008 WL 708778, at *2 (S.D. Fla. Mar. 14, 2008) (Ryskamp, K.) (plaintiff's "anticipation" is merely his own opinion and fails to show that any other potential plaintiffs plan to join the suit); *Horne v. United Services Auto. Ass'n*, 279 F. Supp. 2d 1231, 1236 (M.D. Ala. 2003) (statement in declaration that plaintiff "believes" other employees will join the lawsuit insufficient to grant notice).  The statement does not identify any prospective class members who would opt in, nor does it contain a factual basis for the Court to conclude that other ASMs desire to join the action.  *Robinson*, 2006 WL 3360944, at *4-5 (finding a statement identifying three former employees insufficient).

supervised notice of a class, it should limit the scope of notice to those districts about which Henderson has submitted allegations.

To expand the class beyond the stores were she worked, Henderson must provide "particularized facts" supporting the existence of an unlawful policy in effect at other stores and that CVS "applied" the policy to employees at the other stores "in a manner that violates the FLSA." *Spencer v. Reg. Acceptance Corp.*, 2005 WL 5501490, at *2 (S.D. Fla. Aug. 22, 2005) (Graham, J.) (limitating notice to location where plaintiffs worked). The other Florida stores must be "sufficiently similar" to the stores in which Henderson worked to "warrant inclusion" into the proposed class. *Gutescu v. Carey Int'l, Inc.*, 2003 WL 25586749, at *14 (S.D. Fla. July 21, 2003) (Martinez, J.). Additionally, the Court should consider whether expanding the notice to other locations "would unduly complicate th[e] action by requiring consideration of too many dissimilar circumstances, when viewed in the context of the contested issues." *Id.* at *15 (limiting scope of proposed class to Miami office where "policies and procedures varied from location to location").

Henderson seeks to certify a class spanning the entire State of Florida. There are two separate "areas" that CVS operates within Florida: Area 8 and Area 12. (Hay Dep. 19.) Area 8 covers the panhandle area of Florida (as well as other states), and Area 12 covers the remainder of the state. (*Id.*) It is undisputed, however, that Henderson has presented no evidence whatsoever from Area 8. Furthermore, Area 12 is subdivided into 5 "regions" and 37 different "districts." (*Id.* at 220, 223.) Each operates under an autonomous management structure, *e.g.*, a region manager and district manager. (*Id.* at 24.) Henderson only worked in 3 stores, all located in only 2 of CVS' 37 districts within Area 12. (Henderson Dep. 23-27, 227-28.) Federal courts, including this Court, have consistently restricted the scope of notice under the FLSA to areas where the plaintiff has presented competent evidence. *E.g.*, *Wynder v. Applied Card Sys., Inc.*, 2009 WL 3255585, at *3 (S.D. Fla. Oct. 7, 2009) (Marra, J.) (limiting scope of notice where plaintiff failed to offer evidence that the labor practices at issue extended beyond defendant's Boca Raton, Florida location); *Robbins-Pagel v. WM. F. Puckett, Inc.*, 2006 WL 3393706, at *3 (M.D. Fla. Nov. 22, 2006) (plaintiff who submitted three affidavits from employees who worked at defendant's Volusia County facility "presented no indication that employees outside of Volusia County are similarly situated or would desire to join the suit, and therefore the notice

must be geographically limited"); *Rivera v. Cemex, Inc.*, 2006 WL 3388455, at *2 (M.D. Fla. Nov. 21, 2006) (because supporting affidavits all came from employees who worked at defendant's Orlando location, "plaintiff has presented no indication that employees outside of Orlando are similarly situated or would desire to join the suit, and therefore the notice must be geographically limited" to employees who worked in Orlando).  Accordingly, if the Court is inclined to authorize notice, it should limit the notice to current and former employees in the CVS districts in which Henderson worked.

## IV.    PLAINTIFF'S PROPOSED NOTICE AND CONSENT FORMS ARE DEFICIENT.

CVS respectfully requests that, if this Court orders any notice, the parties be directed to jointly prepare such notice, subject to this Court's approval,[16] to "ensure that it is timely, accurate, and informative." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 172 (1989). Henderson's proposed notice and consent form are biased and inaccurate in the following material respects: 1) the proposed notice should  inform potential opt-in plaintiffs of CVS' position; 2) the proposed notice should inform potential opt-ins of their material responsibilities if they join the litigation (such as: they may be required to engage in substantial discovery, and may be required to pay CVS' costs if Henderson does not prevail or for other reasons); 3) the notice should state that the potential plaintiffs have a right to be represented by counsel of their own choosing; 4) the proposed consent form incorrectly states that the opt-in is designating Henderson as his or her "representative" (Consent ¶ 2); and 5) notice should be sent directly to the Court, particularly in light of Shavitz Law Group's recent misconduct in another FLSA case before this Court.

## CONCLUSION

For the foregoing reasons, CVS respectfully requests that the Court enter an Order denying Henderson's Motion to Authorize Notice to Potential Class Members.

Respectfully submitted, this 20th day of November, 2009.

<div style="margin-left:3em">

*s/ James J. Swartz, Jr.*
James J. Swartz, Jr., Esq.
Florida Bar No. 59565
E-mail: jimswartz@asherafuse.com
Nancy E. Rafuse, Esq.

</div>

---

[16] *See Pendlebury*, 2005 WL 84500 at *4.

*Admitted Pro Hac Vice*
E-mail: nancyrafuse@asherafuse.com
ASHE, RAFUSE & HILL, LLP
1355 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309-3232
Telephone: 404-253-6000
Facsimile: 404-253-6060

David M. DeMaio, Esq.
Florida Bar No. 886513
E-mail: david.demaio@ogletreedeakins.com
Christopher P. Hammon, Esq.
Florida Bar No. 176753
E-mail: chris.hammon@ogletreedeakins.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
701 Brickell Avenue, Suite 2020
Miami, FL 33131
Telephone: 305-374-0506
Facsimile: 305-374-0456

Counsel for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80909-CIV- MARRA/JOHNSON

|  |  |  |
|---|---|---|
| KRISTY HENDERSON, individually and on behalf of persons similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO.: |
| v. | ) ) | 9:09-cv-80909-Marra/Johnson |
| HOLIDAY CVS, L.L.C., a Florida limited liability company, CVS CAREMARK CORPORATION, a Delaware corporation d/b/a CVS/PHARMACY, CVS PHARMACY, INC., a Rhode Island corporation, d/b/a CVS/PHARMACY, and XYZ ENTITIES 1-1000, fictitious names of unknown liable entities, | ) ) ) ) ) ) ) ) ) | November 20, 2009 |
| Defendants. | ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this day the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO AUTHORIZE NOTICE TO POTENTIAL CLASS MEMBERS** has been filed electronically using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Gregg I. Shavitz, Esq.
Hal B. Anderson, Esq.
SHAVITZ LAW GROUP, P.A.
1515 S. Federal Hwy., Suite 404
Boca Raton, FL 33432
gshavitz@shavitzlaw.com

This 20th day of November, 2009.

_s/ James J. Swartz, Jr._
James J. Swartz, Jr., Esq.
Florida Bar No. 59565
E-mail: jimswartz@asherafuse.com
Nancy E. Rafuse, Esq.

*Admitted Pro Hac Vice*
E-mail: nancyrafuse@asherafuse.com
ASHE, RAFUSE & HILL, LLP
1355 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309-3232
Telephone: 404-253-6000
Facsimile: 404-253-6060

David M. DeMaio, Esq.
Florida Bar No. 886513
E-mail: david.demaio@ogletreedeakins.com
Christopher P. Hammon, Esq.
Florida Bar No. 176753
E-mail: chris.hammon@ogletreedeakins.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
701 Brickell Avenue, Suite 2020
Miami, FL 33131
Telephone: 305-374-0506
Facsimile: 305-374-0456

Counsel for Defendants